Filed 12/18/15  In re A.L. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.L.,<br><br>        Defendant and Appellant. | A144299<br><br>(Contra Costa County<br>Super. Ct. No. J1401241) |

After the defendant minor A.L. admitted one count of armed robbery and pleaded no contest to a gun enhancement, the juvenile court ordered placement at the Division of Juvenile Facilities (DJF).  Defendant contends the court abused its discretion in doing so, claiming it failed to consider a less restrictive placement, specifically the Youth Offender Treatment Program (YOTP).  We conclude the court did not abuse its discretion.  We further conclude the court did not err in connection with imposing the maximum term of physical confinement.

**BACKGROUND**

A wardship petition charged defendant, then 16 years old, with two counts of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)) while using a firearm (*id.*, § 12022.53, subd. (b)).  He ultimately admitted count 1 and pleaded no contest to the

1

associated gun enhancement allegation.  In exchange, the People dismissed the second armed robbery count.

According to the police report, which served as the basis of defendant's plea, he and a companion robbed two individuals with a loaded gun.  The victims handed over $60, a cell phone, an identification card, and bank cards.  One victim later identified defendant, from an in-field lineup, as the one pointing the gun.  The other victim did not identify anyone from that lineup.  Despite the one victim's identification and defendant's plea to the gun enhancement, defendant has consistently claimed he was not the one wielding the gun, but was the one who took the victims' belongings.

The probation officer's disposition report recommended a DJF commitment, and recommended a "maximum term" of up to six years 213 days—that is, until defendant's 23rd birthday, at which point his release from DJF would likely be required.  (See Welf. & Inst. Code, § 1769.)[1]  The report highlighted the seriousness of the armed robbery, defendant's refusal to concede he had wielded the gun, his failure at probation in a prior encounter with the criminal justice system (after he had threatened to slit the throat of a middle school teacher), an assessment defendant was at moderate risk of reoffending, and the availability at DJF of specialized treatment programs.  In probation's view, these factors were not outweighed by defendant's good grades in school, strong family environment or his professed remorse for the victims.  The report, itself, did not expressly compare YOTP and DJF placements.

At the disposition hearing, the probation officer testified he considered all possible placements and screened defendant for the Orin Allen Youth Facility, the "Bar-O" ranch program, YOTP and DJF. Bar-O, YOTP and DJF all considered defendant acceptable. The officer viewed Bar-O as less restrictive, followed by YOTP, and then by DJF.  When

---

[1]  All further statutory references are to the Welfare and Institutions Code unless noted.

asked to compare YOTP and DJF, the officer stated there was not a huge difference in the treatment they could provide. Both had anger management and gang diversion classes. But DJF had a program called "CounterPoint" to address "antisocial attitudes and negative peer influences." The probation officer thought this program would be particularly helpful for defendant and did not think YOTP offered something similar.

Defendant's attorney urged placement at YOTP, acknowledging the court was "familiar with" YOTP and maintaining defendant "could get a lot out of it." Counsel asserted a DJF placement was "excessive." The People, in turn, urged the court to commit defendant to DJF, emphasizing the factors highlighted in the probation report.

In the court's view, defendant, as a result of his plea, stood responsible for both the robbery and the use of a firearm. Moreover, based on the information in the record, the court found defendant had, in fact, wielded the gun and, by continuing to disclaim that fact, defendant was refusing to take full responsibility for his role in the crime. The court was also disturbed by the trend in defendant's behavior—from a threatened throat-slitting in middle school to the double armed robbery—and about his failure on informal probation after the threat incident.

After "consider[ing] less[] restrictive" placements, the court was "fully satisfied that they're inappropriate dispositions, and the minor can better benefit from the various programs" at DJF. Explaining, the court believed placement in a secure facility was important given the dangerousness of defendant's crime, and so rejected the ranch program and foster and group homes. It also believed he needed a program lasting more than a year. Having "read up on the programs offered at" DJF, the court noted its schooling and "excellent programs to address [the minor's] anger management, his lack of responsibility, [and] his inability to make correct and appropriate decisions out in[] the community." The court thus concluded, "although I agree [DJF is] probably at the top of the restrictive ladder, unfortunately I find that the minor's best interests are suited by such a placement."

When the court and parties discussed defendant's custody credits, the court stated it needed to also compute defendant's "maximum exposure," which it viewed as 15 years, and which neither party disputed. At that time, defendant's counsel expressed his "understanding . . . the case law permits the Court to set a maximum at something under the calculated maximum." The court responded, "[y]es, the statute actually does," and reiterated it still wanted to calculate the "maximum exposure."

At the hearing, the court stated it was ordering "the term prescribed by law for a maximum term not exceeding the 15-year maximum with the credits as I have previously stated." The commitment form signed by the judge elaborated, specifying 15 years as the "maximum period of imprisonment" for the offenses, and specifying the "maximum period of confinement" to be six years 213 days (as recommended in the probation report).[2] The commitment form also states "[t]he court has considered the individual facts and circumstances of the case in determining the maximum period of confinement."

## DISCUSSION

### DJF Placement

The appropriate placement of a juvenile offender is committed to the sound discretion of the juvenile court. (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396; *In re Travis W.* (2003) 107 Cal.App.4th 368, 379–380.) " 'An appellate court will not

---

[2] As the commitment form reflects, there are two limits to the length of time a minor defendant may be confined. He may not be confined longer than the "maximum period of imprisonment" applicable to an adult committing the same offenses, nor, if being sent to DJF, may he be confined longer than the "maximum term of physical confinement" set by the court based on the facts of the case. (§§ 731, subd. (c), 726; *In re Alex N.* (2005) 132 Cal.App.4th 18, 26.)

Defendant does not dispute that 15 years is the "maximum period of imprisonment." Nor does any party challenge the assumption that defendant cannot be confined at DJF past his 23rd birthday and that this assumption is the genesis of the "maximum term of physical confinement" of six years 213 days.

Neither the parties nor the court were circumspect in their phraseology, and it certainly would have made for a clearer record had they used the statutory language "maximum period of imprisonment" and "maximum term of physical confinement."

4

lightly substitute its decision for that rendered by the juvenile court. We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. [Citations.] In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.' " (*In re Carl N.* (2008) 160 Cal.App.4th 423, 432.)

The gravity of an offense is a consideration in committing a minor to a particular facility. (§ 725.5; *In re Samuel B.* (1986) 184 Cal.App.3d 1100, 1104, disapproved on another ground in *People v. Hernandez* (1988) 46 Cal.3d 194, 206, fn. 14.) Other relevant considerations include the nature, duration, and context of the delinquent conduct and the minor's age. (§ 725.5; *In re Samuel B.*, *supra*, 184 Cal.App.3d at pp. 1103–1105.) The juvenile court may also consider the need to hold the minor accountable for his or her actions (§ 202, subd. (b)), and the community's interest in being protected from crime during rehabilitative efforts (§ 202, subd. (a); *In re Lorenza M.* (1989) 212 Cal.App.3d 49, 57–58).

A DJF placement is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate, in light of the goals of the juvenile law. (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.) While the juvenile law contemplates a progressively restrictive series of dispositions, a juvenile court may impose a more restrictive commitment before attempting less restrictive ones. (*In re Eddie M.* (2003) 31 Cal.4th 480, 507, citing § 202.) Indeed, a juvenile court may consider and select DJF even when a county's probation department recommends a less restrictive commitment. (*In re Martin L.* (1986) 187 Cal.App.3d 534, 544 [probation officer recommended a local disposition, DJF disposition affirmed].) Thus, while DJF generally is a placement of last resort, the circumstances in a particular case may suggest the need for a DJF

commitment, despite the availability of lesser alternative dispositions. (*In re Tyrone O.* (1989) 209 Cal.App.3d 145, 151.)

Unquestionably, defendant had performed well in school, had a strong family, and showed signs of remorse. However, his offense, a double robbery using a loaded weapon, was violent and serious. It followed an incident three years before when he threatened to slit the throat of a teacher, and the minor had thereafter failed on informal probation. Probation evaluated defendant's risk of re-offense as moderate. Additionally, the department and court were seriously concerned about defendant's refusal to accept responsibility for using a loaded firearm, both by virtue of his plea and the evidence.

As he did in the juvenile court, defendant points out he was found suitable for YOTP and argues he should have been placed in that less-restrictive program. While he faults the probation report for not expressly discussing YOTP, the probation officer explained at the disposition hearing that while defendant was found eligible for YOTP, DJF had services and programs, such as the CounterPoint program, that would provide a special benefit to the minor. The juvenile court had also "read up" on all the less-restrictive options and believed the nature of programs at DJF would be of particular benefit to defendant. True, the juvenile court did not specifically mention YOTP while stating the reasons for placement at DJF. But the entire record makes it clear the court was fully aware of YOTP and other less restrictive programs. The record also makes it clear the court rejected all less restrictive programs, and it elaborated on the reasons why it reached that decision.

In sum, the juvenile court's selection of DJF over YOTP and the other less-restrictive programs was neither capricious nor accidental. The court thoughtfully considered the various options, concluding "unfortunately . . . the minor's best interests are suited by [DJF]" even though DJF sits "at the top of the restrictive ladder." The court did not abuse its discretion in selecting this placement in this case.

6

*The Maximum Term*

*Ineffective Assistance of Counsel*

Defendant contends his trial counsel was ineffective for not asking the juvenile court to exercise its discretion under Welfare and Institutions Code section 731 to impose a shorter maximum term of physical confinement. Section 731 "permits the juvenile court in its discretion to impose either the equivalent of the 'maximum period of imprisonment that could be imposed upon an adult for the offense or offenses' committed by the juvenile (§ 731, subd. (c)) or some lesser period based on the 'facts and circumstances of the matter or matters that brought or continued' the juvenile under the court's jurisdiction (*ibid.*)." (*In re Julian R.* (2009) 47 Cal.4th 487, 498.)

To establish ineffective assistance of counsel, defendant must show " '(1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' " (*People v. Johnson* (2015) 60 Cal.4th 966, 979–980; *In re M.V.* (2014) 225 Cal.App.4th 1495, 1528.)

Regardless of the competency of his counsel's representation, defendant cannot show prejudice. The record reflects the juvenile court was aware of its discretion under section 731 and took into account the facts of this particular case. The commitment order form, for example, specifies the maximum term of physical confinement and then has a checked box stating "[t]he court has considered the individual facts and circumstances of the case in determining the maximum period of confinement." Such a statement evidences the court's consideration of a reduced maximum term of physical confinement and the exercise of discretion. (*In re Julian R.*, *supra*, 47 Cal.4th at p. 499 & fn. 4.) The colloquy between the court and defense counsel at the disposition hearing further reflects the court's awareness of the statutory grant of discretion to select a lower maximum term. Moreover, in specifying a six-year, 213-day maximum term of physical confinement (as

7

the probation report had recommended), the court selected a confinement term less than half of the upper limit, 15-year maximum period of imprisonment. Under these circumstances, we cannot say any argument from counsel would have resulted in a more favorable result for the minor. (See *People v. Weaver* (2001) 26 Cal.4th 876, 987–988 [when finder of fact appraised of underlying facts and is presumed to know and apply law correctly, no ineffective assistance claim arises from counsel's failure to make argument connecting facts and law].)

*Term of Confinement*

Defendant also contends the juvenile court abused its discretion in selecting a maximum term of physical confinement of six years 213 days, insuring defendant remains at DJF until he is 23 years old. (See § 1769.) As just discussed, the record reflects the court was aware of its discretion and also considered the specific facts of the case in setting the term. That it disagreed with defendant as to the appropriate term of physical confinement does not evince an abuse of discretion.

While defendant suggests there is some confusion or inconsistency as to the disposition, the record in its entirety leaves no doubt as to the disposition. Defendant is correct that at the hearing, the court spoke of a "15-year maximum." In context, it is clear this time period is the maximum period of imprisonment, correlating with the sentence that could be imposed on an adult offender, and it is clear counsel and the court understood this. The probation report, which the court and counsel reviewed and also had at their disposal, recommended that the maximum term of physical confinement should be six years 213-days. The court minutes, in turn, specify the maximum term is six years 213 days. Finally, the commitment form, signed by the court, references both time periods, specifying 15 years as the "term" for the offense and enhancement, and 6-years, 213-days as the "maximum period of confinement." Thus, there is nothing inconsistent about what the juvenile court did. (Cf. *People v. Beltran* (2013) 56 Cal.4th 935, 945 & fn. 7 [we must harmonize, if possible, apparent conflicts between hearing

8

transcripts and minutes].)  Indeed, no oral pronouncement of the confinement term is required; it is enough if it is specified in the minutes, as it was here.  (*In re Julian R.*, *supra*, 47 Cal.4th at p. 497; Cal. Rules of Court, rule 5.795(b).)  The court must also complete the commitment form as a precondition of DJF commitment, which the court did here.  (Cal. Rules of Court, rules 5.805(1).)

In sum, the record reflects that the juvenile court duly exercised, and did not abuse, its discretion in setting the maximum term of physical confinement.

## DISPOSITION

The disposition order is affirmed.

                                    _____

                                    Banke, J.

We concur:

_____

Margulies, Acting P. J.

_____

Dondero, J.