Filed 3/27/25 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CATHOLIC MEDICAL MISSION BOARD, INC.,<br><br>Plaintiff and Respondent, v.<br><br>THE ATTORNEY GENERAL OF THE STATE OF CALIFORNIA et al.,<br><br>Defendants and Appellants. | B315409<br>B318278<br><br>(Los Angeles County<br>Super. Ct. No. 20STCP01520) |
| FOOD FOR THE POOR, INC.,<br><br>Plaintiff and Respondent, v.<br><br>THE ATTORNEY GENERAL OF THE STATE OF CALIFORNIA et al.,<br><br>Defendants and Appellants. | B315416<br>B318280<br><br>(Los Angeles County<br>Super. Ct. No.      20STCP01626)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br>(No change in appellate judgment) |

THE COURT:

It is ordered that the opinion filed herein on March 5, 2025 shall be modified as follows:

On page 31, the following text in the last sentence at the end of the first paragraph shall be deleted: ", and we reject it." The sentence should read as follows: "To the extent the Attorney General suggests that injunctions or orders reforming a statute entered by a trial court cannot reach nonparties when the government is involved, the cited authorities do not support the contention." Footnote 7 shall remain at the end of the modified sentence.

The petition for rehearing is denied. There is no change in the appellate judgment.

| MARTINEZ, P. J. | SEGAL, J. | STONE, J. |

2

Filed 3/5/25 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CATHOLIC MEDICAL MISSION BOARD, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROB BONTA, as Attorney General, etc., et al., <br><br><br> Defendants and Appellants. | B315409 <br> B318278 <br><br> (Los Angeles County <br> Super. Ct. No. 20STCP01520) |
| FOOD FOR THE POOR, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROB BONTA, as Attorney General, etc., et al., <br><br><br> Defendants and Appellants. | B315416 <br> B318280 <br><br> (Los Angeles County <br> Super. Ct. No. 20STCP01626) |

APPEALS from judgments of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed in part, vacated in part, and remanded with instructions.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Benjamin M. Glickman, Seth E. Goldstein and Jami L. Cantore, Deputy Attorneys General, for Defendants and Appellants.

Murphy Rosen, Paul D. Murphy and Daniel N. Csillag for Plaintiff and Respondent Catholic Medical Mission Board, Inc.

Perlman & Perlman, Tracy L. Boak and Adam D. Miller for Plaintiff and Respondent Food for the Poor, Inc.

_____

## INTRODUCTION

This case involves two permanent injunctions entered against the Attorney General of the State of California prohibiting him from enforcing certain statutory provisions designed to protect the public from false or misleading statements in charitable solicitations. The injunctions were entered at the request of respondents and cross-appellants Catholic Medical Mission Board, Inc. (CMMB) and Food for the Poor, Inc. (FFP) (collectively, respondents).

After conducting an investigation, the Attorney General and the Registrar of the Registry of Charitable Trusts (Registrar) (collectively, the Attorney General) issued cease and desist orders, and imposed civil penalties on respondents for violations of the Supervision of Trustees and Fundraisers for Charitable

2

Purposes Act (the Act) (Gov. Code, § 12580 et seq.).[1]  When administrative proceedings were completed, CMMB and FFP filed separate petitions for administrative mandate and complaints for declaratory relief challenging two sections of the Act under the First Amendment.

The trial court agreed with respondents the challenged sections were facially invalid as unconstitutional prior restraints. After the conclusion of the bench trial, and in their proposed judgments respondents sought, for the first time, a permanent injunction against the Attorney General enjoining him and his office from enforcing the challenged statutory provisions. Respondents argued, and the trial court agreed, that an "injunction goes hand in hand with First Amendment cases."  The trial court issued the permanent injunctions without requiring respondents to plead or prove they were entitled to such relief.

The Attorney General does not challenge the trial court's constitutional rulings but contends the permanent injunctions were improper because such relief is not automatic upon a finding of constitutional invalidity, and respondents failed to plead and prove they were entitled to an injunction.  We conclude the trial court abused its discretion by granting the injunctions. Permanent injunctions are not issued as a matter of course, even in cases implicating the First Amendment.  Rather, plaintiffs seeking a permanent injunction must plead and prove they are entitled to such extraordinary relief.  Accordingly, we vacate the injunctions and remand to have the trial court determine whether plaintiffs should be granted leave to amend to plead for

---

[1] All statutory references are to the Government Code unless otherwise specified.

injunctive relief and, if so, whether they can prove they are entitled to a permanent injunction.

Respondents also cross-appeal from the trial court's reformation of one of the challenged statutory provisions. The trial court reformed section 12591.1 by adding certain language and functionally severing a subdivision in order to preserve the Act's constitutionality. Respondents contend the trial court lacked authority to reform and sever the challenged provision. But there is no categorical rule prohibiting a court from both reforming and severing a statutory provision. Nor have respondents persuasively demonstrated that reformation was contrary to the Legislature's intent because it would have preferred invalidation over reformation. We affirm this portion of the judgments.

Lastly, the Attorney General appeals from postjudgment orders awarding attorney fees to respondents under Code of Civil Procedure section 1021.5. In light of our remand for further proceedings, we vacate the attorney fee awards and direct the court to reconsider entitlement to and the amount of attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

Respondents and cross-appellants are CMMB and FFP. CMMB is a charity affiliated with the Catholic Church. Its "signature" program is named Healing Help, through which CMMB accepts donations of prescription medicine worth hundreds of millions of dollars from pharmaceutical companies. CMMB receives the medicine as in-kind donations, rather than cash donations used to purchase the medicine. CMMB

distributes the medicine worldwide to communities in need. CMMB also solicits and receives cash donations.

FFP is a faith-based charity committed "to improv[ing] the health, economic and social conditions of indigent persons throughout the world." FFP also solicits and receives cash and in-kind charitable donations, with in-kind donations comprising 85 to 90 percent of its revenue. Like CMMB, FFP receives donations of medicine from pharmaceutical companies.

## A. *The Supervision of Trustees and Fundraisers for Charitable Purposes Act*

The Act, based on the Uniform Supervision of Trustees for Charitable Purposes Act, became effective in California in 1955.[2] The Act requires charitable organizations to register with the State of California, to report information regarding their assets and administration, and to refrain from misleading donors in enumerated ways. The Legislature charged the Attorney General with "primary responsibility for supervising charitable trusts in California. . . . The Attorney General has broad powers under common law and California statutory law to carry out these charitable trust enforcement responsibilities." (§ 12598; see 13 Witkin, Summary of Cal. Law (11th ed. 2023) Trusts, § 343.) The Attorney General is authorized to impose monetary penalties. (See § 12591.1, subds. (a) & (c).)

---

[2] The Uniform Supervision of Trustees for Charitable Purposes Act has been adopted, partially or completely, by other states, including Illinois, Michigan, Oregon, Minnesota, Rhode Island, Ohio, and Massachusetts. (U. Laws Ann. (1954) U. Supervision of Trustees for Charitable Purposes Act, eds. note.)

In 2012, the Legislature passed Assembly Bill No. 2327 to "add[] another weapon in the Attorney General's arsenal by permitting the Attorney General to issue a cease and desist order before an act or omission" constituting fraud "has occurred." (2012 Cal. Legis. Service, Ch. 483.)  The author of Assembly Bill No. 2327 explained that, in its current form, the Act only permitted the Attorney General to seek fines after fraudulent or deceptive acts or omissions have occurred, or to pursue remedies in court after the fact rather than to act proactively to protect the public.  The Assembly Judiciary Committee cited press reports chronicling the improper use or diversion of charitable contributions and concerns about fundraising practices impacting the public.  (*Ibid.*)

Assembly Bill No. 2327 authorized the Attorney General to issue cease and desist orders.  It also authorized the Attorney General to impose specified penalties, suspend a charity's registration, or seek injunctive relief.  (2012 Cal. Legis. Service, Ch. 483.)[3]  After Assembly Bill No. 2327 was enacted, section 12591.1, subdivision (b) (section 12591.1(b)) (the cease and desist provision), states as follows:

> "The Attorney General may issue a cease and desist order whenever the Attorney General finds that any entity or person that is subject to the provisions of this article pursuant to Section 12581, or its agent, servant, or employee, has committed an act that would constitute a

_____

[3]    Effective January 1, 2024, the Legislature amended the Act to change the name of the Registry of Charitable Trusts to the Registry of Charities and Fundraisers.  (Assem. Bill No. 1756 (2023-2024 Reg. Sess.), § 1.)  Because this amendment does not affect our analysis, we cite the current version of the Act.

6

violation of, or is operating in violation of, this article, or its implementing regulations, or an order issued by the Attorney General, including, but not limited to, all of the following:

"(1)  Has refused or failed, after notice, to produce any records of the organization or to disclose any information required to be disclosed under this article or Chapter 4 (commencing with Section 300) of Division 1 of Title 11 of the California Code of Regulations.

"(2)  Has made a material false statement in an application, statement, or report required to be filed under this article or Chapter 4 (commencing with Section 300) of Division 1 of Title 11 of the California Code of Regulations.

"(3)  Has failed to file a financial report, or has filed an incomplete financial report, that is required by this article or Chapter 4 (commencing with Section 300) of Division 1 of Title 11 of the California Code of Regulations.

"(4)  Has engaged in any act prohibited pursuant to Section 12599.6."

Section 12599.6 (the prohibited acts provision) in turn enumerates the duties of charitable organizations in connection with fundraising activities.  As relevant here, section 12599.6, subdivision (f)(2) (section 12599.6(f)(2)), provides:  "Regardless of injury, the following acts and practices are prohibited in the planning, conduct, or execution of any solicitation or charitable sales promotion:  [¶] . . .  Using any unfair or deceptive acts or practices or engaging in any fraudulent conduct that creates a likelihood of confusion or misunderstanding."

B.      *The Cease and Desist Orders and Penalties*

In 2018, after conducting an investigation, the Attorney General issued cease and desist orders to CMMB and FFP. The Attorney General determined CMMB and FFP overvalued the in-kind donations they received and that they made false or misleading statements in donor solicitations and their filings. The Attorney General found that even though respondents were prohibited from distributing within the United States the medicine they received (so as not to damage the manufacturers' market), when valuing these in-kind donations they used the higher domestic market prices, rather than lower international fair market prices. This practice failed to conform to generally accepted accounting principles, which all charities soliciting donations in California are required to use. (See Bus. & Prof. Code, § 17510.5.)

The Attorney General also determined respondents misrepresented their "program efficiency ratio," which tells potential donors what percentage of their donation is applied to fundraising or administrative costs, as opposed to the charitable programs themselves. FFP's solicitation materials stated, "Fundraising and other administrative costs comprise less than 5% of our expenses; more than 95% of all donations go directly to programs that help the poor." CMMB represented to donors that 97 percent of received donations were used to support its charitable programs.

The Attorney General concluded these statements were false or misleading. As to FFP, the Attorney General determined FFP actually used 66.2 percent of monetary donations for direct aid in 2013 and 67.4 percent in 2015, less than the 95 percent reported in its solicitations. As to CMMB, the Attorney General

8

determined CMMB actually used 60.5 percent of monetary donations for direct aid in 2014, less than the 97 percent reported in its solicitations. As a result, donors would be led to believe that 95 or 97 percent of their donations would support the charitable programs when their donations actually supported much less. This apparent difference was because in-kind donations of medicine could not be used to pay for administrative or fundraising costs.

The Attorney General ordered respondents to cease and desist from including the misleading program efficiency ratios in their solicitations, imposed civil penalties of $1,088,000 against FFP and $409,575 against CMMB, and requested revocation of FFP's registration.

C.    *The Administrative Proceedings*

Respondents sought administrative review, and an administrative law judge (ALJ) held evidentiary hearings. The ALJ issued proposed decisions finding respondents did not depart from generally accepted accounting principles when valuing in-kind donations. But the ALJ determined the Attorney General proved that respondents' solicitation materials were deceptive due to the stated efficiency ratios. The ALJ found "FFP's solicitations for monetary donations were deceptive in implying that FFP used 95 percent of all money donated for charitable programs, which it did not. FFP really used less than 70 percent of monetary donations for charitable programs, and used the rest for administration and fundraising." Likewise, the ALJ found CMMB misled potential donors into believing that it used 97 or 98 percent of all money donated for charitable programs, when it "really used less than 80 percent."

9

The ALJ affirmed the monetary penalties and ordered each respondent to cease and desist from including in its solicitations to California donors a program efficiency ratio combining cash and in-kind donations. The ALJ rejected the Attorney General's request that FFP's charity registration be revoked. The Attorney General adopted the ALJ's decisions in full.

D.    *The Trial Court Proceedings*

Respondents each filed substantially identical verified complaints and petitions for a writ of administrative mandamus under Code of Civil Procedure section 1094.5. Respondents sought reversal of the cease and desist orders and the civil penalties, and also sought a declaration that sections 12591.1(b) and 12599.6(f)(2) were unconstitutional under the First Amendment, both facially and as applied to respondents. Respondents also sought "such other relief as the Court deems fair and equitable," but did not specifically plead or pray for an injunction.

1.    *The trial court determined the challenged provisions violated the First Amendment*

At the court's suggestion, the parties agreed CMMB's motion for judgment on the pleadings would serve as its trial papers on the declaratory relief cause of action, which would be tried first. FFP indicated it intended to rely on CMMB's papers on this issue. The Attorney General filed an opposition, and CMMB filed a reply.

In a January 2021 statement of decision, the trial court ruled that the cease and desist provision was a prior restraint on speech. In its view, section 12591.1(b) did not "fit within one of

10

the narrowly defined exceptions to the prohibition against prior restraints" and it also did not have "procedural safeguards that reduce the danger of suppressing constitutionally protected speech." Accordingly, the trial court determined section 12591.1(b) was unconstitutional on its face. The court continued the trial on the constitutionality of section 12599.6(f)(2), the civil penalties, and the severability of section 12591.1(b), allowing the parties further briefing on those issues.

In a March 2021 statement of decision, the court ruled section 12599.6(f)(2) was also facially invalid and invalid as applied to respondents because it was unconstitutionally overbroad and not narrowly tailored to meet a compelling state interest. As to section 12591.1(b), the trial court ruled that subdivision (b)(4) was not severable (a ruling it would later revisit). The court also found the weight of the evidence supported the administrative findings that CMMB's and FFP's solicitations were deceptive and that the Attorney General did not abuse his discretion by imposing the civil penalties. The court, however, vacated the civil penalties based on its constitutional rulings.

The court directed respondents to prepare a proposed judgment and writ based on the statements of decision, serve the Attorney General for approval as to form, and meet and confer with the Attorney General regarding any objections. Respondents would then file with the court the proposed judgment and writ, along with a declaration setting forth any unresolved objections. The court set a hearing to consider the proposed judgment. The Attorney General subsequently filed a motion for new trial, which was heard the same day.

### 2. *The trial court granted permanent injunctions*

CMMB prepared and circulated a proposed judgment and writ. The parties corresponded once and participated in one meet-and-confer call to discuss this initial draft. The primary subjects of the parties' disagreement during this time are not at issue in this appeal.

On June 7, 2021, CMMB circulated a different proposed judgment that for the first time included a permanent injunction against the Attorney General enjoining him from enforcing sections 12591.1(b) and 12599.6(f)(2). CMMB's cover email stated, "we have added two additional provisions to the Proposed Judgment that we have not previously conferred about so I am bringing them to your attention now. The first change is that, in addition to declaring the statutes unconstitutional, the Court would enjoin your office from implementing or enforcing them. My understanding is that such a provision is standard when a statute is declared unconstitutional. The second change is a requirement that the [Attorney General] give notice of the order to everyone tasked with implementing or enforcing the statutes. Again, my understanding is that this provision is standard in situations like ours." CMMB cited no legal authority in support of either contention. FFP stated its proposed judgment would mirror that of CMMB.

The Attorney General objected to the proposed additions, which respondents had not previously requested and which the trial court had not granted at trial. The parties were unable to resolve the issue.

Respondents filed their proposed judgments with the injunctions, and their proposed writs, along with supporting attorney declarations. These largely identical declarations

addressed "the injunction issue" in one paragraph. Respondents recounted the parties' disagreement regarding the injunction and stated their requests for declaratory relief "necessarily put the remedy of an injunction in play, as there is no other remedy available to protect against the [Attorney General's] further use of these now-illegal statutes." Respondents did not otherwise provide any evidentiary or legal support for a permanent injunction.

The Attorney General objected to respondents' proposed injunction because "there was no motion, hearing, or evidence presented in support of an injunction. Neither Petitioner requested injunctive relief, and the Statement of Decision likewise did not grant injunctive relief in either case." The Attorney General also argued CMMB and FFP "failed to explain why they waited until three months after the trial to seek injunctive relief."

On June 17, 2021, the trial court held a hearing on the proposed judgments and writs and also on the Attorney General's new trial motion (the latter is discussed in the next section). The court stated an injunction could be part of a declaratory relief claim and that it was disinclined to require the Attorney General to give notice to his subordinates of the injunction. The court and the Deputy Attorney General addressed the proposed injunction without input from CMMB or FFP.

The trial court stated its view that an injunction was appropriate where there existed the possibility of further enforcement against nonparties. It asked the Deputy Attorney General: "[A]re you telling me that you want a declaration of rights as to these parties alone [i.e., CMMB and FFP] and as to

13

the Salvation Army you're going to go after them under (f)(2)? That's what you're suggesting to me."

The Deputy Attorney General responded: "Your Honor, I am not in a position to state what the Attorney General will decide on this, but I'm saying that from our standpoint, this is really inappropriate. The petitioners themselves are not entitled to injunctive relief. They never sought injunctive relief. And, you know, to say that other nonparties can estop the government to preclude these issues is against the law."

The court concluded, an "injunction goes hand in hand with First Amendment cases. Yeah, no, you're not going to talk me out of an injunction. The more you argue, the more convinced I am that there should be an injunction." The trial court denied the Attorney General's request for a stay of the injunction pending appeal.

### 3. *The trial court reformed section 12591.1*

After the court issued its statements of decision, the Attorney General filed a motion for new trial seeking, in part, to sever subdivision (b)(4) from section 12591.1 to preserve the rest of the provision and his enforcement powers relating to charity registration and reporting requirements, which respondents did not challenge. The trial court issued a tentative order denying the motion.

At the same June 17, 2021 hearing, the Attorney General argued for the first time that section 12591.1(b) could be preserved through reformation and not solely by severance. The trial court stated its prior ruling invalidating section 12591.1(b) was limited to speech-based violations of the Act and the ruling

14

was not intended to address violations unrelated to speech.[4]  It asked, "[H]ow can we fix this so that my ruling is that the Attorney General cannot use 12591.1(b) to issue a cease-and-desist order based directly on speech?"  After a lengthy colloquy, the trial court decided it would sever subdivision (b)(4) and reform section 12591.1(b) to add an exclusionary clause such that the Attorney General could issue a cease and desist order for any violation of the Act, except for violations of section 12599.6.

> 4.     *The trial court entered the judgments, including the permanent injunctions against the Attorney General*

The trial court directed the parties to meet and confer regarding the proposed judgments and writs based on its stated rulings.  The Attorney General expressly reserved the right to appeal the injunctions.  The trial court entered the judgments.  As relevant here, the judgments stated:  "Government Code sections 12591.1(b)(4) and 12599.6(f)(2) are declared facially unconstitutional and shall be enjoined.  Respondent Attorney General Rob Bonta, and his officers, agents, servants, employees, and attorneys are enjoined from implementing or enforcing Government Code sections 12591.1(b)(4) and 12599.6(f)(2)."  The judgment also reformed section 12591.1(b) as detailed in Part B in the Discussion.

The Attorney General appealed, and CMMB and FFP each cross-appealed from the judgments.

---

[4]     CMMB's counsel conceded it was "not challenging the fact that the Attorney General can require charities to register, file papers, or do the items that are listed in (b)(1) through (3)."  Nor was it arguing "that (b)(1) through (3) are separate First Amendment violations."

15

This Court granted the Attorney General's petition for writ of supersedeas and stayed enforcement of the permanent injunctions.

The trial court subsequently awarded attorney fees to CMMB and FFP. The Attorney General timely appealed from those postjudgment orders.

## DISCUSSION

A. *The Permanent Injunctions Against the Attorney General*

The Attorney General "strenuously" disagrees with the trial court's First Amendment analysis, but he does not challenge those rulings on appeal. The Attorney General's principal argument is that the permanent injunctions were improper because respondents did not plead or prove they were entitled to injunctive relief. Specifically, he argues respondents did not show irreparable harm, or that an injunction was necessary to make them whole. He also challenges the statewide scope of the injunctions because they encompass nonparties.

We conclude the trial court abused its discretion when it assumed a permanent injunction should be granted as a matter of course. We vacate the injunctions and remand for the trial court to determine in the first instance whether CMMB and FFP can plead and prove permanent injunctions are warranted.

1. *Standard of review*

We review an order granting a permanent injunction for abuse of discretion. (See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109; *Mendez v. Rancho Valencia Resort Partners, LLC* (2016) 3 Cal.App.5th 248, 260 (*Mendez*).) When exercising a grant of discretion, the court must adhere to

16

applicable legal criteria and cannot act arbitrarily.  (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon Enterprises*).)  "'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion . . . .  [¶]  The legal principles that govern the subject of discretionary action . . . are derived from the common law or statutes under which discretion is conferred.'  [Citation.]  To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.'"  (*Id.* at p. 773.)  We review the court's factual findings for substantial evidence.  (See *Mendez,* at pp. 260-261.)  We review legal issues de novo.  (*Id.* at p. 261.)

###### 2.      *Legal standards for permanent injunctions*

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  (*Monsanto Co. v. Geertson Seed Farms* (2010) 561 U.S. 139, 165 (*Monsanto*); see *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1352 (*Intel*).)  "If a less drastic remedy" is sufficient to address the relevant injury, "no recourse to the additional and extraordinary relief of an injunction [is] warranted."  (*Monsanto,* at pp. 165-166.)  To that end, "a judicial remedy must be tailored to the harm at issue.  [Citations.]  A court should always strive for the least disruptive remedy adequate to its legitimate task."  (*Butt v. State of California* (1992) 4 Cal.4th 668, 695-696 (*Butt*); see *Califano v. Yamasaki* (1979) 442 U.S. 682, 702 ["injunctive relief should be no more burdensome to the defendant than necessary to provide

17

complete relief to the plaintiffs"]; *Planned Parenthood Golden Gate v. Garibaldi* (2003) 107 Cal.App.4th 345, 354 [it "is inconsistent with the very nature and purpose of injunctive relief . . . to extend a remedy beyond the context of the specific dispute which justifies that remedy"].)

A permanent injunction is different than a preliminary injunction in ways that affect the issuing court's discretion. "'A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate.' [Citation.] 'Although a decision whether to issue, and how to phrase, a permanent injunction is essentially discretionary [citation], the trial court's discretion is by no means as broad as that which it might exercise in weighing the equities of the parties' positions for the purpose of deciding whether to issue a preliminary injunction or other provisional relief. "A permanent injunction is very different from a pendente lite injunction. . . ." [Citation.] Like any judgment, a permanent injunction, notwithstanding its discretionary component, must be sufficiently supported by the evidence of record. [Citations.] If the evidence is insufficient to justify issuance of a permanent injunction, the trial court simply had no discretion to exercise.'" (*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 721 (*Kaleidescape*); see 38 Cal. Jur. 3d Injunctions, § 14.)

"To qualify for a permanent injunction, the plaintiff must prove (1) the elements of a cause of action involving the wrongful act sought to be enjoined (here, declaratory relief); and (2) the grounds for [injunctive] relief." (*San Diego Unified Port Dist. v. Gallagher* (1998) 62 Cal.App.4th 501, 503; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th

18

359, 390 (*Horsford*).)  To prove the grounds for injunctive relief, "the plaintiff must ordinarily show that the defendant's wrongful acts threaten to cause *irreparable* injuries, ones that cannot be adequately compensated in damages." (*Intel, supra,* 30 Cal.4th at p. 1352; see *Kaleidescape, supra,* 176 Cal.App.4th at p. 726; Code Civ. Proc., § 526; Civ. Code, § 3422.)

A corollary principle is that a showing of entitlement to declaratory relief does not automatically mean a permanent injunction is proper because the latter is subject to its own pleading and proof requirements.  The California Supreme Court has long held that it is not enough for a complaint to generally allege "'that great and irreparable injury will result' from the acts described by the pleader.  It has always been the rule in this state that such averments, standing alone, have no probative force and cannot be made the basis for injunctive relief. . . .  A complaint for an injunction which alleges only general conclusions, not warranted by any pleading of facts, does not state a cause of action to enjoin the acts complained of. [Citations.]" (*E.H. Renzel Co. v. Warehousemen's Union I. L.A. 38-44* (1940) 16 Cal.2d 369, 373 (*E.H. Renzel*); accord, *City of Torrance v. Transitional Living Centers for Los Angeles, Inc.* (1982) 30 Cal.3d 516, 526 (*City of Torrance*); *Leach v. City of San Marcos* (1989) 213 Cal.App.3d 648, 661; *Pittsburg Unified School Dist. v. California School Employees. Assn.* (1985) 166 Cal.App.3d 875, 894.)

"The issuance of an injunction to restrain enforcement of [a law] declared unconstitutional is not invariably appropriate.  An ancillary injunction should not issue as a concomitant to a declaratory judgment *unless the pleading and proof demonstrate that the traditional requisites of injunctive relief have been met.*

19

When the plaintiff has failed to prove any facts which would entitle him to any affirmative relief beyond a declaration of his rights, the issuance of an injunction is error." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 32 (*California Water*), italics added.)

This is an application of the general rule that in declaratory relief actions, parties seeking injunctive relief must still plead and prove entitlement to it. (See *City of San Diego v. Cuyamaca Water Co.* (1930) 209 Cal. 105, 151 (*City of San Diego*) ["This . . . is an action purely declaratory in character and is one wherein the plaintiff has neither pleaded nor attempted to prove any facts which would entitle it to any other or affirmative relief beyond [declaratory relief]. This being so, the trial court was in error in attempting to give to its determination of this matter any other or further effect than that of a declaratory judgment."]; *Klarfeld v. State of California* (1983) 142 Cal.App.3d 541, 550 (*Klarfeld*) ["The injunction was properly denied, Plaintiffs were entitled to a declaration of rights, but they have failed to show any facts entitling them to any affirmative relief."].)

Further, a court has authority to issue a permanent injunction to enjoin the execution of a public statute but may only do so when the plaintiff has shown actual or threatened injury. (See *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 501 (*Alfaro*); see also Code Civ. Proc., § 526, subd. (b)(4) & (6); Civ. Code, § 3423, subds. (d) & (f).) An injunction based on past acts may be proper "'if there is evidence that they will probably recur.'" (*Rosicrucian Fellowship v. Rosicrucian Fellowship Non-Sectarian Church* (1952) 39 Cal.2d 121, 144.) "Without a threat of present or future injury, no injunction can lie." (*Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 751 (*Connerly*).)

3.      *Respondents did not plead and prove they were entitled to permanent injunctions*

On appeal, the Attorney General does not challenge the grant of declaratory relief.  Accordingly, we are only concerned with whether respondents pleaded and proved they were entitled to permanent injunctive relief.

a.      *The complaints did not request injunctive relief*

The Attorney General first argues respondents did not plead for injunctive relief.  We agree.  Generally, a complaint must be "sufficient to acquaint the defendant with the nature, source, and extent of the plaintiff's claim."  (*Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1376; see Code of Civ. Proc., § 425.10, subd. (a)(2) [a complaint must contain "[a] demand for judgment for the relief to which the pleader claims to be entitled"]; Code Civ. Proc., § 580, subd. (a) ["the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue"].)

In *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302 (*Davis*), the court held a plaintiff's failure to allege injunctive relief arising from a wrongful termination claim precluded plaintiff from obtaining such relief.  There, the plaintiff sued his employer for wrongful termination and failure to pay wages in violation of the Labor Code and Business & Professions Code section 17200 (UCL).  (See *id.* at p. 1309.)  In the body of the complaint and in the prayer for relief on the UCL cause of action, the plaintiff requested "'a temporary and permanent injunction requiring [d]efendant[s] to refrain from withholding earned and/or owed money and property from [him].'"  (*Id.* at p. 1312.)

The jury found plaintiff's age was a substantial motivating factor for his discharge but also found the employer would have discharged plaintiff in any event based on poor job performance. The plaintiff was not entitled to damages given the jury's findings, and the court issued a directed verdict against plaintiff on his Labor Code and UCL claims. (See *Davis, supra,* 245 Cal.App.4th at p. 1326.) After the jury's verdict, for the first time, plaintiff sought declaratory and injunctive relief on his wrongful termination claim. The court held the plaintiff failed to raise or preserve these remedies. He did not specifically plead for declaratory relief in his complaint. And he only pleaded for injunctive relief as to his UCL cause of action, not his wrongful termination cause of action. The court further determined the plaintiff "made no attempt to amend his complaint to add a claim for declaratory relief or to expand his request for injunctive relief to include relief relevant to his discrimination claim." (*Ibid.*; see *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1403, fn. 6 [plaintiff's request for injunction against one set of defendants in his complaint was not preserved against second set of defendants; complaint could not be amended to include second set of defendants in injunction when it was "highly speculative" whether the issues raised against the second set of defendants in the complaint would ever arise again].)

As in *Davis,* respondents here failed to raise and preserve injunctive relief as a remedy for their declaratory relief claim. The complaints did not put the Attorney General on notice regarding the extent of the relief that respondents sought. Although the complaints alleged facts sufficient to support their causes of action for declaratory relief, there were no allegations regarding injunctive relief. The complaints lacked even the

general or conclusory allegations of "great and irreparable injury" the California Supreme Court has previously determined to be insufficient to plead for injunctive relief. (*E.H. Renzel, supra,* 16 Cal.2d at p. 373; *City of Torrance, supra,* 30 Cal.3d at p. 526.) Indeed, in its opposition to the proposed judgment, the Attorney General questioned why respondents waited until three months after trial was completed to seek a permanent injunction. At oral argument in this Court, the Deputy Attorney General argued his office would have conducted the litigation differently had respondents made known their intent to seek injunctive relief in their pleadings, including staffing and litigation strategy.

Respondents attempt to overcome this pleading deficiency by relying on their request for "such other relief as the Court deems fair and equitable." Respondents argue this allegation is sufficient under the policy favoring a broad reading of the pleadings. According to respondents, the trial court has "inherent authority to grant any relief consistent with the successful cause of action and the established facts."

Respondents' authorities do not support the proposition that a plaintiff may obtain an injunction as part of a cause of action for declaratory relief when the complaint does not request such extraordinary relief. *Estrin v. Superior Court* (1939) 14 Cal.2d 670, 678, did not involve a claim for injunctive relief, and the court merely explained that facts alleged in a defendant's answer may expand the claims or relief awarded to a plaintiff beyond what is alleged in the complaint. But respondents here make no similar argument regarding the Attorney General's answer to their complaints. *Potrero Homes v. Western Orbis Co.* (1972) 28 Cal.App.3d 450, 456, also did not involve injunctive relief, and there the court held that specific performance

allegations in the complaint did not bar a judgment for monetary damages. And in *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 968 (*County of Del Norte*), unlike respondents here, the plaintiff expressly filed "an action in mandate and for injunctive relief."

Citing *County of Del Norte*, respondents further assert that all they had to plead were facts supporting declaratory relief because an injunction "is attendant" to the declaratory relief cause of action. But *County of Del Norte* does not so hold and, as noted above, the plaintiff there sought injunctive relief in the complaint. Further, we agree with *California Water, supra,* 253 Cal.App.2d at page 32 that "[a]n ancillary injunction should not issue as a concomitant to a declaratory judgment unless the pleading and proof demonstrate that the traditional requisites of injunctive relief have been met."

Although a complaint may be amended after trial to conform to proof (see Code Civ. Proc., § 576), respondents never sought to amend their complaints in the trial court to plead for injunctive relief.

b.  *Whether respondents proved entitlement to permanent injunctions*

The Attorney General also argues respondents did not prove they were entitled to a permanent injunction. As the parties seeking injunctive relief, respondents had the burden of providing evidence sufficient to justify the issuance of a permanent injunction. (See *Intel, supra,* 30 Cal.4th at p. 1352; *City of San Diego, supra,* 209 Cal. at p. 151; *California Water, supra,* 253 Cal.App.2d at p. 32; *Kaleidescape, supra,* 176 Cal.App.4th at p. 721.) Such a showing would include

24

evidence demonstrating respondents would suffer irreparable injury, lack of an adequate remedy at law, and a likelihood of recurring or future injury.  (See *Intel,* at p. 1352; *Alfaro, supra,* 98 Cal.App.4th at p. 501; *Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 357-358; see also *Planned Parenthood Shasta-Diablo v. Williams* (1995) 10 Cal.4th 1009, 1019.)

The request for a permanent injunction was made for the first time after the trial on the merits of respondents' declaratory relief claim.  Respondents introduced no additional evidence in support of the injunction demonstrating "that the defendant's wrongful acts threaten to cause *irreparable* injuries" (*Intel, supra,* 30 Cal.4th at p. 1352), or "any facts which would entitle [them] to any other . . . relief beyond [declaratory relief]" (*City of San Diego, supra,* 209 Cal. at p. 151).  Respondents' only support for their request for a permanent injunction was their counsels' declarations.  These declarations addressed the need for an injunction in one paragraph and presented no evidence to support the injunctions.  Respondents instead cited *Estrin v. Superior Court, supra,* 14 Cal.2d at page 678, for the proposition that a "party is entitled to 'any and all relief which may be appropriate under the scope of his pleadings and within the facts alleged and proved.'"  But, as noted, respondents did not plead for injunctive relief nor did they prove any facts demonstrating their entitlement to it.

That respondents proved they were entitled to declaratory relief was not enough to support a permanent injunction.  (See *California Water, supra,* 253 Cal.App.2d at p. 32; *City of San Diego, supra,* 209 Cal. at p. 151; *Klarfeld, supra,* 142 Cal.App.3d at p. 550.)  At a minimum, they additionally needed to prove irreparable harm and threatened injury because these are not

required elements for declaratory relief.  (See *Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 235 [declaratory relief requires "'two essential elements:  "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a party."'"]; see also Code Civ. Proc., § 1060.)  Because there was no evidence before the trial court supporting the permanent injunctions they cannot stand.

Rather than explaining what evidence before the trial court supported the injunctions, respondents raise several legal arguments.  First, respondents assert that "the [trial court's] finding of facial invalidity alone was sufficient to support the trial court's issuance of the permanent injunction."  In their view, a permanent injunction is "essential" to enforce a judgment that a statute is facially invalid because such a challenge automatically means the State may not enforce the invalidated law.  Respondents also cite California and federal cases where courts enjoined enforcement of facially invalid laws.  But none of respondents' cases considered the proposition that a permanent injunction automatically flows from a ruling that a statute is facially invalid, nor did any of these cases so hold.  It "'"is axiomatic that cases are not authority for propositions not considered."'"  (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626; *People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)

Further, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  (*Monsanto, supra,* 561 U.S. at p. 165; see *Intel, supra,* 30 Cal.4th at p. 1352.)  And the categorical rule respondents propose would be out of step with traditional equitable requirements

26

emphasizing that "each case must be governed by the circumstances that surround it, and by relative equities." (*Peterson v. City of Santa Rosa* (1897) 119 Cal. 387, 391; see *Butt*, *supra*, 4 Cal.4th at pp. 695-696.)[5]  Indeed, not all cases involving facially invalid laws in the First Amendment context have authorized a permanent injunction.  (See, e.g., *Virginia Society for Human Life, Inc. v. Federal Election Commission* (4th Cir. 2001) 263 F.3d 379, 393 [facially invalidating regulation based on speech grounds, but reversing permanent injunction involving nonparties], overruled on other grounds as noted by *Real Truth About Abortion, Inc. v. Federal Election Commission* (4th Cir. 2012) 681 F.3d 544; *Bernstein v. United States Department of State* (N.D. Cal. 1997) 974 F. Supp. 1288, 1309-1310 [similar].)

Next, according to respondents, cases involving facial challenges under the First Amendment "per se" demonstrate irreparable harm because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Respondents cite *Elrod v. Burns* (1976) 427 U.S. 347, 373, *Ketchens v. Reiner* (1987) 194 Cal.App.3d 470, *Roman Catholic Diocese of Brooklyn v. Cuomo* (2020) 592 U.S. 14, 15, and *American Booksellers Assn., Inc. v. Superior Court* (1982) 129 Cal.App.3d 197, 206.

---

[5]  The United States Supreme Court has also rejected applying presumptions in favor of injunctive relief.  (See *Monsanto*, *supra,* 561 U.S. at p. 157.)  In *Monsanto*, it rejected the presumption "that an injunction is the proper remedy for a . . . violation [of an environmental statute] except in unusual circumstances."  (*Ibid.*)  The Court held that "[n]o such thumb on the scales is warranted," and that "a court must determine that an injunction should issue under the traditional . . . test" for injunctive relief.  (*Id.* at pp. 157-158, emphasis omitted.)

27

"We do not quarrel with the finding in the above cases relying on *Elrod* that, on the facts there presented, irreparable harm would result if the courts did not enjoin the practice, ordinance or statute involved. [¶] The present case, however, is very different." (*Sundance Saloon, Inc. v. City of San Diego* (1989) 213 Cal.App.3d 807, 817-818.) Here, respondents made no legal argument or factual showing in the trial court that irreparable harm would follow if the court did not enjoin the challenged provisions. (See *Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1041 ["'A permanent injunction . . . is a final judgment on the merits'" and "[l]ike any judgment, a permanent injunction . . . must be sufficiently supported by the evidence of record"]; *Sundance Saloon,* at p. 817 ["it is illogical to rotely and routinely enjoin the enforcement of all laws affecting free speech without the imposition of human judgment"].)

But even if we were to assume respondents demonstrated irreparable harm because the First Amendment is involved, respondents also needed to demonstrate future or recurring injury. Even in cases involving facially invalid statutes, California courts have consistently required evidence of future injury or the threat of future injury before authorizing a permanent injunction.

For example, in *Connerly, supra,* 146 Cal.App.4th at page 742, the Court of Appeal reversed a permanent injunction preventing the Governor and Attorney General from implementing a statute declared facially invalid and unenforceable under the California Constitution. The court reasoned, "The fact that a void law is on the books is not sufficient, by itself, to justify the issuance of an injunction." (*Id.*

28

at p. 748.) "[A]bsent allegations demonstrating that defendants are enforcing or threatening to enforce [the statute], there is no basis upon which to issue an injunction." (*Id.* at p. 743.) Instead, "[t]here is a presumption that state officers will obey and follow the law." (*Id.* at p. 751.) *Connerly* warned, "injunctions cannot be predicated on the proponent's fear of something that may happen in the future." (*Id.* at p. 750; see *Lee v. Gates* (1983) 141 Cal.App.3d 989, 993 ["In the case at bench, there is no reasonable expectation that the city will prosecute under a Penal Code section that is clearly unconstitutional under the reasoning of the [California Supreme Court] case."]; see also *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332 (*Scripps Health*) [injunctive relief "should neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future"].)

Presumably the declaratory judgment stating the challenged provisions are facially unconstitutional would protect respondents from the threat of future enforcement. The trial court's grant of the permanent injunctions appears to have been motivated by its concern the Attorney General would enforce the challenged statutory provisions against nonparties.[6] California courts have also required evidence of recurring harm or the threat of future harm against nonparties before authorizing a permanent injunction covering nonparties. In *Horsford, supra,*

---

[6] Respondents assert the injunction does not apply to nonparties because its proscription applies only to the Attorney General. But the Attorney General is charged with enforcing the Act by the Legislature (§ 12598), so an injunction against him or his office is necessarily an injunction enjoining the enforcement of the challenged statutes against nonparties.

29

132 Cal.App.4th at p. 366, the plaintiffs' complaint sought injunctive relief regarding their individual employment rights. After trial, the plaintiffs moved for an order seeking broader injunctive relief. Specifically, they sought an injunction to prohibit the defendant from discriminating based on race in its hiring or other employment practices. *Horsford* affirmed the denial of the injunction as to nonparties because it was not raised at trial and no evidence was offered or received at trial that the defendant previously discriminated against any other employees or currently did so. (See *id.* at p. 391; see also *Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1043 [injunction unnecessary where no evidence of recurrence].)

Here, when the trial court stated at the post-trial hearing that the Attorney General "argued in [his] motion that [he] want[ed] to be able to use [12599.6](f)(2) in future actions against other parties," the Deputy Attorney General responded: "[T]hat is something that will have to be reviewed and considered by the Attorney General." Later, when the trial court stated the Attorney General intended to "go after" the Salvation Army, the Deputy Attorney General stated: "I am not in a position to state what the Attorney General will decide on this." According to FFP, the Attorney General essentially "told the trial court he intended to enforce the invalid statutes." And CMMB argues the Attorney General "effectively conceded that he intended to continue to use these infirm statutes to assist his enforcement efforts against all other charities."

The Attorney General's positions in this court raise similar concerns. At oral argument, counsel for the Attorney General appeared to acknowledge that reformed section 12591.1 applied to all charities and stated that his office would enforce the Act as

30

reformed. This concession was subsequently retracted in the Attorney General's supplemental brief (see fn. 9, *infra*) because "it does not accurately reflect the position of the California Department of Justice." The supplemental brief further stated that "in our system of government, superior court orders do not have binding legal force on the government when it interacts with individuals or entities that were not parties to the case before the court," and "superior court orders lack preclusive effect as to the government vis-à-vis nonparties." To the extent the Attorney General suggests that injunctions or orders reforming a statute entered by a trial court cannot reach nonparties when the government is involved, the cited authorities do not support the contention, and we reject it.[7]

c.     *Remand to plead and prove entitlement to injunctive relief*

Ordinarily, we would decide this appeal based on the record presented, but we "conclude we should remand the matter . . . to allow the court to consider whether [it] adequately addressed the material issues that are now expressly provided. 'It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. Such a remand may be made to permit further evidence to be taken or additional findings to be made upon essential points.'" (*Carter v.*

---

[7]     *Fenske v. Board of Administration* (1980) 103 Cal.App.3d 590, 596 dealt with an as applied, rather than facial, challenge to a statute. (*See id*. at p. 594.) And *Helene Curtis v. Assessment Appeals Board* (1999) 76 Cal.App.4th 124, 133 contains no analysis and we decline to follow it.

*California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 930-931; see *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 803 [remand for further factfinding appropriate where trial court applied incorrect legal standard]; Code Civ. Proc., § 906 [appellate court may order retrial or further proceedings if necessary and proper].)

On remand, the trial court shall determine whether respondents: (1) should be given leave to amend their complaints to plead for injunctive relief; and if so, (2) can prove entitlement to a permanent injunction with evidence of irreparable harm and any threat of future enforcement of the challenged statutory provisions by the Attorney General.[8] On remand, the parties may present additional evidence on the issues involved, including any briefing filed in this court.

Further, as discussed in the next section, we affirm the trial court's reformation of section 12591.1(b), which prevents the Attorney General from issuing a cease and desist order for violations of section 12599.6. The trial court should assess whether the reformed statutory provisions eliminate the need for a statewide permanent injunction, either because an injunction is unnecessary or because the reformation renders any subsequent injunction moot.[9] (See *Scripps Health, supra,* 72 Cal.App.4th at

---

[8] Because we vacate the injunctions and remand, we need not reach the Attorney General's arguments the injunctions violated rules against nonmutual collateral estoppel, required class certification, and were overbroad because they encompass statutes not at issue in the underlying case.

[9] At our request, the parties filed supplemental briefs addressing whether the injunctions were rendered moot by the reformation of section 12591.1. The parties argued, and we agree, that even if the injunctions were moot (an issue we need

p. 332 [a change in circumstances at the time of the hearing, rendering injunctive relief moot or unnecessary, justifies denial of the request].)

B.     *The Trial Court's Reformation of Section 12591.1(b)*

Respondents cross-appeal and argue the trial court erred by reforming and severing section 12591.1(b) rather than striking it down in its entirety.  The trial court added language in bold and italics to subdivision (b), which also had the effect of functionally severing subdivision (b)(4), such that it reads as follows:

> "The Attorney General may issue a cease and desist order whenever the Attorney General finds that any entity or person that is subject to the provisions of this article pursuant to Section 12581, or its agent, servant, or employee, has committed an act that would constitute a violation of, or is operating in violation of, this article, or its implementing regulations, or an order issued by the

---

not decide), we should exercise our discretion to determine their validity given the public importance of the injunctions entered against the Attorney General, who is charged with enforcing the Act.  (See *Konig v. Fair Employment & Housing Com.* (2002) 28 Cal.4th 743, 745, fn. 3 ["On issues of great public interest, we have the inherent discretion to resolve the matter despite events which may render the matter moot."]; *Peterson v. City of San Diego* (1983) 34 Cal.3d 225, 227 ["Although the case is technically moot, appellate courts have discretion to consider a case when the issues are of continuing public importance."]; *Hardie v. Eu* (1976) 18 Cal.3d 371, 379.)  On remand, the trial court should determine whether any injunctions it issues are necessary or moot in light of the reformation.

Attorney General, including, but not limited to, all of the following, *except for a violation of Section 12599.6*:

"(1)  Has refused or failed, after notice, to produce any records of the organization or to disclose any information required to be disclosed under this article or Chapter 4 (commencing with Section 300) of Division 1 of Title 11 of the California Code of Regulations.

"(2)  Has made a material false statement in an application, statement, or report required to be filed under this article or Chapter 4 (commencing with Section 300) of Division 1 of Title 11 of the California Code of Regulations.

"(3)  Has failed to file a financial report, or has filed an incomplete financial report, that is required by this article or Chapter 4 (commencing with Section 300) of Division 1 of Title 11 of the California Code of Regulations.

"(4)  Has engaged in any act prohibited pursuant to Section 12599.6."

Respondents argue the trial court could not simultaneously reform and sever the statutory provision.[10]  According to respondents, a court may only reform a statute to prevent a finding of constitutional infirmity.  In their view, once a court declares a statute to be invalid, reformation of the offending statute is no longer possible, and the court may only conduct a severability analysis to determine whether "the taint infects the

_____

[10]    Although the parties argue the trial court reformed and severed section 12591.1(b), the trial court's judgment only added the language to the provision noted in the body.  We understand the parties as arguing that such language had the effect of functionally severing subdivison (b)(4).

34

whole." They further argue that section 12591.1(b)'s term of enlargement (i.e., "including, but not limited to, all of the following") precludes severance in this case. And even if the trial court had the power to reform the statute after its constitutionality ruling, respondents contend the trial court's reformation is impermissible in this case because it is contrary to the Legislature's intent and it would have preferred invalidation over reformation.

### 1. *Standard of review*

The standard of review is de novo for questions involving statutory construction, including whether a statute is severable or may be reformed. (*See Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527; *Advanced Modular Sputtering, Inc. v. Superior Court* (2005) 132 Cal.App.4th 826, 833.) Under de novo review, the appellate court gives no deference to the trial court's ruling or the reasons for its ruling, but instead decides the matter anew. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 119; *Union Bank of California v. Superior Court* (2004) 115 Cal.App.4th 484, 488.)

### 2. *Legal standards for reformation and severance of statutes*

The California Supreme Court has determined that a court "may, in appropriate circumstances, and consistently with the separation of powers doctrine, reform a statute to conform it to constitutional requirements in lieu of simply declaring it unconstitutional and unenforceable. The guiding principle is consistency with the Legislature's . . . intent: a court may reform a statute to satisfy constitutional requirements if it can conclude

35

with confidence that (i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred such a reformed version of the statute to invalidation of the statute." (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 615 (*Kopp*); accord, *Legislature of the State of California v. Padilla* (2020) 9 Cal.5th 867, 875 (*Padilla*).)

As to severability, "[t]he cases prescribe three criteria for severability:  the invalid provision must be grammatically, functionally, and volitionally separable." (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 821 (*Calfarm*).)  Like reformation under *Kopp*, volitional separability requires consideration of legislative intent.  Whether a constitutionally invalid part of a statute is severable from the remaining part "depends on whether the remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute . . . or constitutes a completely operative expression of the legislative intent . . . [and is not] so connected with the rest of the statute as to be inseparable." (*Id.* at p. 821, quoting *Santa Barbara School District v. Superior Court* (1975) 13 Cal.3d 315, 331 (*Santa Barbara*).)  "[I]t is clear that severance of particular provisions is permissible despite the absence of a formal severance clause." (*Legislature v. Eu* (1991) 54 Cal.3d 492, 535; accord, *Hollywood Park Land Co., LLC v. Golden State Transportation Financing Corp.* (2009) 178 Cal.App.4th 924, 942 (*Hollywood Park Land Co.*).)

3.    *The law does not reflect a categorial bar against a court reforming and severing a statute*

Respondents contend severance and reformation may not be simultaneously utilized because reformation is only available before a finding of constitutional invalidity and severance only afterward.  *Kopp* does not support such a categorial rule, and instead observes that "all decisions in which courts preserve [legislative] enactments by severance are to some extent examples of judicial reformation."  (*Kopp, supra,* 11 Cal.4th at p. 641.)

In *Kopp,* the California Supreme Court "comprehensively" addressed courts' power to reform statutes.  (*Padilla, supra,* 9 Cal.5th at p. 875.)  *Kopp* contrasted "simply plac[ing] a saving 'construction' on the statutory language, thereby constricting the reach of the statute" with "*disregard[ing]* language and . . . *substitut[ing]* reformed language."  (*Kopp, supra,* 11 Cal.4th at p. 646; accord, *People v. Sandoval* (2007) 41 Cal.4th 825, 844, fn. 7.)  *Kopp* explained the "distinction . . . suggests a difference of degree, not kind. . . .  In practical effect, in all of these cases, we 'rewrote' each statute in order to preserve its constitutionality."  (*Kopp,* at p. 646.)

*Kopp* examined and approvingly cited *Brockett v. Spokane Arcades, Inc.* (1985) 472 U.S. 491 (*Spokane Arcades*).  There, the United States Supreme Court, through "a combination of severance and . . . insertion of limiting language," reformed a Washington state statute to make it constitutional.  (*Kopp, supra,* 11 Cal.4th at p. 640 [discussing *Spokane Arcades*].)  That statute used the term "lust" in its definition of regulated obscene matter, and the Ninth Circuit had invalidated the entire statute on the ground the term was unconstitutionally overbroad.  (*Ibid.*)

*Spokane Arcades* cautioned restraint and observed that courts "'should not extend [the] invalidation of a statute further than necessary to dispose of the case before it.'" (*Ibid.*)

These cases reflect that reformation and severance are not mutually exclusive tools, as respondents argue, and that they may be used in combination. Other cases have similarly considered severance as a part of reformation. (See, e.g., *California Redevelopment Association v. Matosantos* (2011) 53 Cal.4th 231, 275 (*Matosantos*) [court severed the invalid part of a statute and reformed the remainder]; *Abbott Laboratories v. Franchise Tax Bd.* (2009) 175 Cal.App.4th 1346, 1361 (*Abbott Laboratories*) [court considered whether invalid statute could be severed and reformed].)

4. *The trial court did not err by severing and reforming section 12591.1*

The trial court did not err by functionally severing subdivision (b)(4) and reforming section 12591.1(b) by adding certain language ("except for a violation of Section 12599.6") to comply with constitutional principles, rather than invalidating the provision in its entirety. We are guided by the exhortations in *Kopp* and *Spokane Arcades* that a court "'should not extend [the] invalidation of a statute further than necessary to dispose of the case before it.'" (*Kopp, supra,* 11 Cal.4th at p. 640; *Spokane Arcades, supra,* 472 U.S. at p. 502; *Hollywood Park Land Co., supra,* 178 Cal.App.4th at p. 941 ["invalid provisions of a statute should be severed whenever possible to preserve the validity of the remainder of the statute"].)

a. *Severance of section 12591.1(b)(4)*

We first address whether section 12591.1(b)(4) is grammatically, functionally and volitionally separable. (See *Hotel Employees & Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 613.) Respondents contend subdivision (b)(4), which allows the Attorney General to issue a cease and desist order for any act prohibited by section 12599.6 (i.e., "has engaged in any act prohibited pursuant to Section 12599.6"), is not grammatically, functionally, and volitionally separable. Respondents' arguments are unpersuasive.

Section 12591.1(b)(4) is grammatically separable because it "can be separated by paragraph, sentence, clause, phrase, or even single words." (*Abbott Laboratories*, *supra,* 175 Cal.App.4th at p. 1358 [ruling that all the words after "'year'" in disputed subdivision were "'reasonably separable'" from the remaining portions of that subdivision].) Subdivision (b)(4) is a "distinct and separate provision" such that it can be removed without "affecting the wording of any other provision." (*Calfarm*, *supra*, 48 Cal.3d at p. 822.)

Section 12591.1(b)(4) is functionally separable. "[F]unctional separability depends on whether the remainder of the enactment is complete in itself and can be implemented without the continuation of the invalid provision." (*POET, LLC v. State Air Resources Bd.* (2017) 12 Cal.App.5th 52, 92.) Because subdivision (b)(4) is only one basis for a cease and desist order, the remaining provisions (i.e., subdivisions (b)(1) to (b)(3) and section 12591.1(b) with the added language) are easily "capable of independent application." (*Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560, 1578.)

Section 12591.1(b)(4) is also volitionally separable. Volitional separability "depends on whether 'the remainder . . . would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute.'" (*Santa Barbara, supra,* 13 Cal.3d at p. 331.) As described below, the record before us indicates the Legislature likely would have adopted the remainder of section 12591.1(b) had it foreseen the invalidity of subdivision (b)(4) and section 12599.6(f)(2).[11]

The legislative history demonstrates the Legislature sought to provide the Attorney General with the authority to issue a cease and desist order or seek civil penalties against any person or entity violating the Act, and that sections 12591.1(b)(4) and 12599.6 are only part of that broader grant of authority. (Assem. Com. on Appropriations, Rep. on Assem. Bill No. 2327 (2011-2012 Reg. Sess.) April 16, 2012, p. 1.) The Legislature was motivated to give such powers to the Attorney General due to perceived abuses stemming from the improper use of charitable funds, including a case involving the board of a San Diego-based charity for burn victims that diverted over $100,000 in charitable donations for personal expenses. (*Id.* at p. 2.) To address such situations, for example, section 12591.1, subdivision (b)(3), grants the Attorney General authority to issue a cease and desist order if a charity fails to file a financial report or has filed an incomplete financial report, which the Legislature meant as a red

---

[11]     The Attorney General does not argue that the trial court's reformation of section 12591.1(b) is overbroad, nor does he ask this Court to narrow the reformation because it removes all of section 12599.6 (rather than just subdivision (f)(2)) from his authority to issue cease and desist orders.

40

flag to alert the Attorney General to potential diversion of assets. (*Id.* at pp. 2-3.)

Respondents argue "the Legislature's unambiguous statements that section 12591.1(b) was enacted to stop fraud 'before an[] act or omission has occurred' necessarily reflects a legislative intent to stop charitable speech." But, as noted above, the fraudulent acts by certain charitable organizations that motivated the Legislature to enact Assembly Bill No. 2327 included misappropriation and improper diversion of charitable assets. (Assem. Com. on Appropriations, Rep. on Assem. Bill No. 2327 (2011-2012 Reg. Sess.) April 16, 2012, p. 1.) The Legislature was not solely concerned with fraud in connection with charitable speech in fundraising. Respondents have not demonstrated that sections 12591.1(b)(4) and 12599.6(f)(2) were so critical to the Legislature's amendment of the Act that the amendment would not have been enacted without these subdivisions, let alone that the Legislature would have preferred its statutory amendments be rejected in their entirety if these two particular subdivisions were deemed unlawful. Rather, the record before us demonstrates the Legislature would have preferred the Attorney General to have some cease and desist authority rather than none. (See *Santa Barbara, supra,* 13 Cal.3d at p. 332 ["it seems eminently reasonable to suppose that those who favor the [law] would be happy to achieve at least some substantial portion of their purpose"].)

We decline respondents' invitation to recognize an exception to traditional statutory reformation principles for statutes containing a "term of enlargement." We are unpersuaded by respondents' argument that section 12591.1(b)(4) is not severable because section 12591.1(b) contains the term of

41

enlargement phrase "including, but not limited to."  (See *In re D.O.* (2016) 247 Cal.App.4th 166, 175 [collecting cases on function of a term of enlargement].)  In their view, severing subdivision (b)(4) "merely strikes one example from an illustrative list," while preserving "the power illustrated by subdivision (b)(4), including the content-based regulation of charitable speech" under other statutory provisions in section 12591.1(b).[12]

Respondents cite no authority that statutes containing a term of enlargement may not be severed to preserve their constitutionality.[13]  And such a rule would be contrary to *Kopp* and *Spokane Arcades'* exhortation that a court "'should not extend [the] invalidation of a statute further than necessary to dispose of the case before it.'"  (*Kopp, supra,* 11 Cal.4th at p. 640; see *Spokane Arcades, supra,* 472 U.S. at p. 502.)  Further, respondents have not demonstrated there is anything unique

---

[12]    Respondents contend section 12591.1(b) allows regulation of speech in several other provisions of the Act.  As a result, in respondents' view, the entirety of section 12591.1(b) is invalid because it permits the Attorney General to issue a cease and desist order for violations of "Sections 12599.6(a), (b), (f)(2)-(f)(12), and (g)" as well as "[section] 12599(j)."  But respondents did not challenge, and the trial court did not declare, any substantive provision of the Act unconstitutional other than section 12599.6(f)(2).  Because the issue is not before us, we express no opinion on whether these or other provisions of the Act are constitutional.

[13]    Federal circuit courts have authorized severance of statutes with terms of enlargement to preserve their constitutionality, including statutes implicating free speech.  (See, e.g., *United States v. Rundo* (9th Cir. 2021) 990 F.3d 709, 715; *United States v. Miselis* (4th Cir. 2020) 972 F.3d 518, 543.)

42

about section 12591.1(b) preventing severance and reformation. Here, due to the term of enlargement, severing section 12591.1(b)(4)'s express reference to section 12599.6 does not eliminate any implicit reference contained in section 12591.1(b). The trial court resolved this by adding the language "except for a violation of Section 12599.6" (addressed in the next section) in bold and italics to section 12591.1(b). Adding such "words of limitation" to "uphold the statute's validity" is wholly consistent with the law. (*Kopp*, at p. 641; *Spokane Arcades*, at p. 498.) This added language made subdivision (b)(4) separable by removing subdivision (b)(4) from the Attorney General's implicit power to issue cease and desist orders.[14] In this light, we cannot say subdivision (b)(4) is "so connected with the rest of the statute as to be inseparable" such that "the entire act must fail." (*In re Portnoy* (1942) 21 Cal.2d 237, 242.)

>    b.    *Reformation of section 12591.1(b)*

The trial court's reformation of section 12591.1(b) to add "except for a violation of Section 12599.6" is consistent with legislative intent. The trial court's addition of this language "reform[s] [the] statute to conform it to constitutional requirements in lieu of simply declaring it unconstitutional and unenforceable." (*Kopp, supra,* 11 Cal.4th at p. 615.) And, the additional language "(i) . . . reform[s] the statute in a manner that closely effectuates policy judgments clearly articulated by

---

[14]    CMMB also argues the unreformed statute remains on the books and "nobody will know about this contrary qualifier unless they happen to learn of the trial court's judgment." Our affirmance of the trial court's reformation, of course, provides the necessary notice.

the [Legislature], and (ii) the [Legislature] would have preferred such a reformed version of the statute to invalidation of the statute." (*Ibid.*) For the reasons detailed above, we have determined the Legislature would have preferred the reformed version of section 12591.1(b) to invalidation.

The Assembly Committee on the Judiciary in its comments on the bill clearly articulated a public policy "to stop fraud or deceit[,] hopefully before they can harm charitable organizations." (Assem. Com. on Appropriations, Rep. on Assem. Bill No. 2327 (2011-2012 Reg. Sess.) April 16, 2012, p. 2.) To that end, the Legislature amended section 12591.1 to allow the Attorney General to issue a cease and desist order "as soon as the Attorney General learns of concerns regarding a fundraiser's practices, or notices inconsistencies, irregularities or omissions from a charitable organization's mandating filings." (*Ibid.*) The trial court's reformation of this provision closely effectuates policy judgments clearly articulated by the Legislature, and it furthers the Legislature's intent to authorize the Attorney General to stop fraud or deceit through cease and desist orders without restraining charitable organizations' free speech rights.

We are unpersuaded by respondents' argument that the Legislature intended section 12591.1(b) to be a prior restraint on charitable speech and that the trial court's addition of the "except for a violation of section 12599.6" is contrary to that intent. The plain terms of section 12591.1(b) regulate conduct unrelated to protected speech in subdivisions (b)(1) through (b)(3). (See § 12591.1, subd. (b)(1) [failure to produce records]; *id.*, subd. (b)(2) [false statements in reporting requirements]; *id.*, subd. (b)(3) [failure to file financial report].)

In sum, the trial court did not err by reforming and severing section 12591.1. (See *Kopp, supra,* 11 Cal.4th at p. 659 [a court's "reluctance" to reform a statute can do "far more violence to the legislative scheme than would the proposed reformation"]; *id.* at p. 661 [further noting "'of course . . . ultimate authority to recast or scrap the law in question remains with the political branches'"].)

## C.   *The Attorney Fee Awards*

The Attorney General also appealed from postjudgment orders awarding attorney fees to respondents under Code of Civil Procedure section 1021.5. In light of our reversal and remand of the injunctions, we vacate the attorney fee awards. On remand, the trial court should determine the effect of any injunctions and our affirmance of the reformation of section 12591.1 on any award of attorney fees.

## DISPOSITION

The order granting the injunctions is reversed, we vacate the injunctions, and we remand to the trial court for further proceedings. On remand, the trial court shall: (a) allow CMMB and FFP to file motions seeking leave to amend their complaints to plead for permanent injunctive relief, and if the court determines leave is warranted; (b) determine whether CMMB and FFP can prove they are entitled to a permanent injunction. The judgments are modified by striking the following text: "and shall be enjoined. Respondent Attorney General Rob Bonta, and his officers, agents, servants, employees, and attorneys are enjoined from implementing or enforcing Government Code

45

sections 12591.1(b)(4) and 12599.6(f)(2)."  In all other respects, the judgments are affirmed.

The postjudgment orders awarding attorney fees are vacated, and on remand the trial court is directed to consider entitlement to attorney fees and the amount to be awarded including the effect of any injunctions and of this court's affirmance of the reformation of section 12591.1.

The parties shall bear their own costs on appeal.


MARTINEZ, P. J.

We concur:


SEGAL, J.


STONE, J.